JUSTICE LEAPHART
concurring in part and dissenting in part. ¶35 I concur with the Court’s resolution as to issue number three. For the following reasons, I dissent as to issue number two.
¶36 The majority opinion holds that “an insured must be totally reimbursed for all losses as well as costs, including attorney fees ... before the insurer can exercise any right of subrogation.” While I agree that an insured should be made whole before an insurer can exercise its subrogation right, I disagree with the Court’s broad interpretation of when an insured is made whole. The majority concludes that an insured is only made whole when he has been compensated for all losses, apparently including losses that may not have been covered by the insurer. I would hold that, for purposes of an insurer’s subrogation right, an insured is made whole when she has been fully compensated, including costs and attorney fees, for that element of damage for which she purchased insurance. When an amount recovered from a third party (or its insurer) can be broken down and attributed to separate elements of a claim, either through settlement documents or through special interrogatories at trial, subrogation is reasonable.
¶37 Subrogation is a device of equity. “The theory behind this principle is that absent repayment of the insurer the insured would be unjustly enriched by virtue of recovery from both the insurer and the wrongdoer, or in absence of such double recovery by the insured, the third party would go free despite his legal obligation in connection with [the] loss.” Skauge, 172 Mont. at 524-25, 565 P.2d at 630.
¶38 In Skauge, we noted that when an insured recovers an amount from the tortfeasor that is less than the total loss, “the loss should be borne by the insurer for that is a risk the insured has paid it to assume.” Skauge, 172 Mont. at 528, 565 P.2d at 632 (emphasis added).
¶39 In that case, the Skauges lost all of their personal possessions in *279 a fire. Their personal property insurer paid them their policy limit, approximately $4300. Skauges then brought a negligence action against third parties, alleging over $11,000 in total damages. We held that the Skauges’ insurer could not assert its subrogation right until Skauges had been “made whole for [their] entire loss and any costs of recovery, including attorney’s fees.” Skauge, 172 Mont. at 528, 565 P.2d at 632.
¶40 In Skauge, the insurer had been paid to assume the risk of damage to Skauges’ personal property. Until Skauges had been fully compensated for their loss of personal property, they had not been “made whole.”
¶41 In the present case, Hartford was paid to assume the risk that Swansons would incur medical expenses. Because of the lack of a record in this case, we do not know whether the Swansons were “made whole” as to their medical expenses and we do not know what other elements of damage were included in their settlement from the tortfeasor. All we know is that Hartford paid “some” medical expenses, that the tortfeasor’s company, Constitution, paid one check towards medicals in the amount of $25,962 and Swansons’ total medical expenses exceeded $50,000. Without knowing the total medical expenses and how much Hartford paid toward them, we cannot tell whether Swansons were made whole as to that loss. If Swansons have not been made whole as to their medical expenses, then there is no right of subrogation, as it would be unreasonable. On the other hand, if Swansons have received medical payments in excess of their actual medical expenses, Montana public policy, pursuant to § 33-23-203, MCA, allows for reasonable subrogation.
¶42 To deny Hartford’s right of subrogation unless Swansons recover for other elements of damage would have the effect of making Hartford an insurer against those uninsured losses as well as medical expenses. Swansons, however, have not paid for protection beyond their medical expenses. See Ludwig v. Farm Bureau Mutual Insurance Co. (Iowa 1986), 393 N.W.2d 143.
¶43 By way of a hypothetical, assume that Jim has insurance through Acme Insurance Company on a painting valued at $20,000. While transporting the painting to his home, Jim is involved in an automobile accident. The painting is destroyed, his car is totaled and Jim is injured. Acme pays Jim $20,000 for the painting. The other driver’s insurance company pays Jim $35,000 for property damage: $20,000 for the painting and $15,000 for his vehicle. The company also pays Jim $25,000 for his personal injuries. However, his medical expenses were $30,000..
¶44 As I read the majority opinion, even though Jim has received *280 duplicate payments for the same element of loss (the painting), Acme would not be allowed to subrogate since Jim has not been fully compensated for all his losses-that is, he suffered $30,000 in medical expenses and has only been paid $25,000. .
¶45 The “made whole” doctrine has to be applied to the risk which was insured against. In the example, the risk assumed by Acme was that the painting would be damaged. Acme did not assume the risk that Jim would suffer personal injury. It did not insure Jim against “all losses.” If Jim has been made whole as to the risk for which he paid premiums and for which Acme insured, then Acme must be allowed to subrogate. “Made whole” means that Jim has recovered all his costs and attorney fees incurred in collecting the duplicate payment from the tortfeasor.
¶46 Montana’s statute, § 33-23-203(2), MCA, allows for reasonable subrogation clauses “that are designed to prevent duplicate payments for the same element of loss under the motor vehicle liability policy or under another casualty policy that provides coverage ....” (emphasis added). The Court’s interpretation of the “made whole” doctrine is premised on the assumption that “typically, as here, the ultimate settlement (or judgment amount) is for a gross amount, without allocation for each particular element of loss.”[1] In thus assuming that typical settlements cannot be allocated, the Court, in effect, writes the “same element of loss” language out of the statute and conveniently neglects to factor that requirement into its “made whole” analysis. The statutory language, however, requires a case by case determination of whether an allocation as to the “same element of loss” is practical.
¶47 If we are to give effect to both the concept of “reasonable subrogation” and the “same element of loss” language in § 33-23-203(2), MCA, we must interpret the statute as allowing subrogation by the injured party’s insurer once the insured has received a duplicate payment from a third party insurer for the “same element of loss.” In other words, under the provisions of § 33-23-203(2), MCA, the prerequisite for reasonable subrogation is not whether the insured as been indemnified for “all losses”- but whether he or she has been indemnified by a third party for the “same element of loss” as that which was insured.
CHIEF JUSTICE GRAY joins in the foregoing concurring and dissenting opinion of JUSTICE LEAPHART.

 Contrary to the Court’s assumption that the settlement here was a “gross amount without allocation,” the stipulated facts indicate that it was allocated to “advance payment of medical expenses.”